UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

IN RE:

OLD CARCO LLC, formerly known as Chrysler LLC,

                           Debtor,

OLD CARCO MOTORS LLC, CHRYSLER GROUP
LLC, and OLD CARCO LIQUIDATION TRUST,

                      Plaintiffs,                    10 Civ. 8283 (PKC)

        -against-

                                     MEMORANDUM
                                     AND ORDER

JOHN SUTHERS, Colorado Attorney General; ROXY
HUBER, Colorado Department of Revenue Executive
Director, BRUCE ZULAUF, Division Director and
Executive Secretary of the Colorado Motor Vehicle
Dealer Board, and RAYMOND COTTRELL, Chairman
of the Kentucky Motor Vehicle Commission.

                    Defendants.
----------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

          The plaintiffs in this action assert that certain state statutes directed toward the

relationships between vehicle manufacturers and their dealership franchises violate the

Supremacy Clause because they are contrary to provisions of the federal Bankruptcy Code, 11

U.S.C. §§ 363, 365, et seq., as well as the orders of the bankruptcy court in In re Old Carco LLC

(f/k/a Chrysler LLC), et al., Case No. 09-50002 (AJG) (the "Bankruptcy Court").  Separately, the

plaintiffs contend that the statutes unlawfully interfere with the parties' reasonable contractual

expectations, thereby violating the Contract Clause of the Constitution and the Kentucky State

Constitution.  In an Order dated April, 2011, this Court withdrew the automatic reference to the

Bankruptcy Court, concluding that non-core issues of federal law predominated.  (Docket #5.)

The plaintiffs move for summary judgment in their favor, and officials from the state of Kentucky move to dismiss the Complaint.

For the reasons explained below, plaintiff's motion for summary judgment is granted as to the claim of preemption under the Supremacy Clause against the Kentucky defendants. The motion to dismiss filed by the Kentucky defendants is denied. The claim against Colorado is dismissed without prejudice for the reasons discussed below. I do not reach the plaintiff's Contract Clause claim as it is unnecessary to do so. Familiarity with my opinion in In re Old Carco LLC, 442 B.R. 196 (S.D.N.Y. 2010), is assumed.

BACKGROUND

The facts of this case are largely undisputed. Except as noted, the facts asserted by the plaintiffs, as they are set forth bellow, are admitted by all defendants. Every reasonable inference is drawn in favor of the non-moving parties. Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995).

Plaintiffs Old Carco and Old Carco Motors (collectively, the "Debtor Plaintiffs") are, along with twenty-four of their affiliates, debtors in the above-captioned Chapter 11 bankruptcy proceedings. (Pl. 56.1 ¶ 1; Col.. 56.1 Opp. ¶ 1; Ken. 56.1 Opp. ¶ 1) Old Carco formerly manufactured Chrysler, Jeep and Dodge brand vehicles, with Old Carco Motors acting as distributor to authorized dealers in the United States. (Pl. 56.1 ¶ 2; Col.. 56.1 Opp. ¶ 2; Ken. 56.1 Opp. ¶ 2) Plaintiff Chrysler Group LLC ("New Chrysler") is a newly created entity that assumed certain liabilities of Chrysler debtors, including non-parties to this action. (Pl. 56.1 ¶ 4; Col.. 56.1 Opp. ¶ 4; Ken. 56.1 Opp. ¶ 4) New Chrysler both manufactures and distributes the Chrysler, Jeep and Dodge vehicle brands. (Pl. 56.1 ¶ 4; Col.. 56.1 Opp. ¶ 4; Ken. 56.1 Opp. ¶ 4) It is not a debtor in the bankruptcy action.

Three separate rulings of the Bankruptcy Court are relevant to the preemption claim. Each of these rulings bears on the plaintiffs' obligations to vehicle dealership franchises, the state-law regimes that govern relations between manufacturers, distributors and dealers, and the nexus between the Bankruptcy Code and state dealer laws.

I.    The Sale Opinion and the Sale Order

The Debtor Plaintiffs entered into a purchase agreement with New Chrysler and Fiat S.p.A ("Fiat") dated April 30, 2009 (the "Purchase Agreement").  (Pl. 56.1 ¶ 3; Col.. 56.1 Opp. ¶ 3; Ken. 56.1 Opp. ¶ 3.)  As summarized in an opinion of the Bankruptcy Court approving the transaction, New Chrysler acquired the debtors' assets and liabilities for $2 billion, while Fiat acquired an ownership interest in New Chrysler and provided it with technological support.  In re Chrysler, LLC, 405 B.R. 84, 92 (Bankr. S.D.N.Y. 2009).  On May 3, 2009, all Chrysler debtors filed a motion in the Bankruptcy Court for the approval of the Purchase Agreement.  (Pl. 56.1 ¶ 10; Col.. 56.1 Opp. ¶ 10; Ken. 56.1 Opp. ¶ 10.)  Several state attorneys general objected.  (Pl. 56.1 ¶ 19; Col.. 56.1 Opp. ¶ 19; Ken. 56.1 Opp. ¶ 19.)  The Bankruptcy Court approved the Purchase Agreement and the underlying transaction in a written opinion (the "Sale Opinion"), which, among other things, concluded that if the transaction did not proceed, the debtors would likely be forced into immediate liquidation.  In re Chrysler, LLC, 405 B.R. at 96.  The Sale Opinion was accompanied by a separate order that approved the transaction (the "Sale Order").  (Pl. 56.1 ¶ 11; Col.. 56.1 Opp. ¶ 11; Ken. 56.1 Opp. ¶ 11.)  The Sale Opinion and Sale Order were affirmed by the United States Court of Appeals for the Second Circuit.  See In re Chrysler, LLC, 592 F.3d 370, 372 (2d Cir. 2009).  (Pl. 56.1 ¶ 12; Col. 56.1 Opp. ¶ 12; Ken. 56.1 Opp. ¶ 12.)  Subsequently, the Second Circuit vacated its judgment as moot, consistent with the instructions of the Supreme Court.  See In re Old Carco LLC, 592 F.3d 370, 372 (2d Cir. 2010).

II.    <u>The Assumed Agreements and the Rejected Dealer Agreements</u>

Pursuant to the Purchase Agreement and the Sale Order, New Chrysler's "purchased assets" included assumed and assigned dealer agreements for Chrysler, Dodge and Jeep vehicle lines (the "Assumed Agreements").  (Pl. 56.1 ¶ 13; Col. 56.1 Opp. ¶ 13; Ken. 56.1 Opp. ¶ 13.)  Certain dealer agreements were not assumed by New Chrysler (the "Rejected Dealer Agreements"), and New Chrysler filed with the Bankruptcy Court a motion to confirm its assumption and rejection of the agreements.  (Pl. 56.1 ¶¶ 14-15; Col. 56.1 Opp. ¶¶ 14-15; Ken. 56.1 Opp. ¶¶ 14-15.)  Again, certain state attorneys general, including Kentucky's, objected to the motion and participated in the related hearings.  (Pl. 56.1 ¶ 19; Col. 56.1 Opp. ¶ 19; Ken. 56.1 Opp. ¶ 19.)  Colorado had notice and a full and fair opportunity to participate in discovery and hearings and to be heard in opposition.  (Pl. 56.1 ¶ 20; Col. 56.1 Opp. ¶ 20.)  Neither of the defendants appealed the Sale Order or Rejection Order.  (Pl. 56.1 ¶ 21; Col. 56.1 Opp. ¶ 21; Ken. 56.1 Opp. ¶ 21.)

On June 9, 2009, following argument and an evidentiary hearing, the Bankruptcy Court entered an order, pursuant to 11 U.S.C. §§ 105 and 365, that authorized the debtors' rejection of the executory contracts and unexpired leases with the Rejected Dealers (the "Rejection Order").  (Pl. 56.1 ¶ 115; Col. 56.1 Opp. ¶ 15; Ken. 56.1 Opp. ¶ 15.)  On June 19, 2009, the Bankruptcy Court issued an opinion explaining the basis for the Rejection Order, particularly as to the debtors' "persuasive showing" that the rejection of existing dealer contracts would benefit the estate and was the product of sound business judgment.  <u>In re Old Carco LLC</u>, 406 B.R. 180, 192, 194-99 (Bankr. S.D.N.Y. 2009). [1]  The Bankruptcy Court held that while the state laws intended to grant protection to dealer franchises may have been adopted in the public

---

[1] The Rejection Order and Rejection Opinion were never appealed, although more than six months after the order and opinion were filed, certain Rejected Dealers filed a motion to reconsider, which the Bankruptcy Court denied. <u>In re Old Carco LLC</u>, 423 B.R. 40 (Bankr. S.D.N.Y. 2010).  Judge Hellerstein of this Court affirmed the denial of that motion.  <u>In re Old Carco LLC</u>, 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010).

interest, they did not account for the national interest embodied in federal bankruptcy laws, and were not adopted to protect the states' citizens from imminent threats to health or safety.  Id. at 189-91.  The Bankruptcy Court concluded that application of the state statutes would obstruct federal bankruptcy adjudication, specifically as to the Bankruptcy Court's power to reject executor contracts under 11 U.S.C. § 365, and that the state laws were preempted.  Id. at 199-207.

       III.    Preemption of Rejected-Dealer Claims Brought Under State Law

On August 13, 2009, the debtors and New Chrysler filed a joint motion in the Bankruptcy Court to enjoin legal actions brought by Rejected Dealers in Arkansas, Ohio and Wisconsin as contrary to the Sale Order, the Sale Opinion, the Rejection Order and the Rejection Opinion, as well as the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362.  (Pl. 56.1 ¶ 22; Col. 56.1 Opp. ¶ 22; Ken. 56.1 Opp. ¶ 22.)  In an unpublished opinion dated August 31, 2009, the Bankruptcy Court held that the Sale Order barred the dealers' lawsuits, since the Sale Order "clearly prohibited any successor or transferee liabilities against New Chrysler."  (Compl. Ex. F at 5-6.)  The Bankruptcy Court stated that "a crucial condition" of its approval of the Fiat transaction was that New Chrysler would not be required to assume all then-existing dealer agreements, and it concluded that the actions against New Chrysler brought pursuant to the state franchise laws were "enjoined by the Sale Order."  (Compl. Ex. F at 6.)

The Bankruptcy Court also held that the state franchise laws were "preempted by the Bankruptcy Code to the extent that the enforcement of such laws conflict with the terms of the Sale Order or the impact of the rejection of the rejected agreements."  (Compl. Ex. F at 7.)  It noted that the Rejection Order stated that the Rejected Dealers "shall have no further rights (direct, indirect, contractual or otherwise) to act as an Authorized Dealer . . . ."  (Compl. Ex. F. at 7.)  The dealers' legal actions, the Bankruptcy Court held,

are in direct conflict with the terms of the Rejection Order because the Dealers are seeking to burden New Chrysler with the obligation of either continuing the previously rejected dealer agreements or suffering other unfavorable consequences as a result of the rejected dealer agreements. The Rejection Order ended the Dealers' right to act as authorized dealers while the Wisconsin, Ohio and Arkansas statutes resurrect precisely those rights and compel New Chrysler, the successor/transferee of Debtors, to resume the dealer agreements. As there is a direct conflict between the Rejection Order and the statutes under which the Subject Actions are based, the state statutes are preempted under the Rejection Order and the Dealers are enjoined under the Sale Order from bringing any actions pursuant to these statutes in any court.

(Compl. Ex. F at 8.) The Bankruptcy Court further held that because the state lawsuits "would undermine and frustrate the benefit achieved through the rejection process, such statutes were preempted." (Compl. Ex. F at 9.) In an unpublished memorandum and order dated July 2, 2010, Judge McMahon affirmed the Bankruptcy Court's opinion. In re Old Carco Liquidation Trust, 09 Civ. 8875 (CM) (S.D.N.Y. July 2, 2010).

IV.    Allegations in the Present Action

        The Complaint asserts that federal preemption bars state officials from enforcing certain dealership laws, and seeks declaratory and injunctive relief. In March 2010, Colorado amended several sections of its state dealer laws. (Pl. 56.1 ¶ 25; Col. 56.1 Opp. ¶ 25) In June 2010, Colorado also enacted an additional amendment to its dealer law. (Pl. 56.1 ¶ 26; Col. 56.1 Opp. ¶ 26.) Kentucky enacted an amendment to its state dealer law in July 2010. (Pl. 56.1 ¶ 27; Ken. 56.1 Opp. ¶ 29.) The defendants are government officials of the states of Colorado and Kentucky whose responsibilities include the enforcement of state automobile dealer laws. (Pl. 56.1 ¶¶ 5-9; Col. 56.1 Opp. ¶¶ 5-9; Ken. 56.1 Opp. ¶¶ 5-9.) As discussed in greater detail below, these state dealer amendments granted protections to preexisting dealerships in the event that a

6

manufacturer or distributor were to contract with a new or different dealership in the same geographic area.

On April 23, 2010, the Debtors and New Chrysler filed a Complaint in the Bankruptcy Court, asserting that the Bankruptcy Code and the final orders of the Bankruptcy Court preempt the dealer amendments of Colorado and Kentucky. The Debtor Plaintiffs and New Chrysler also allege that the state dealer laws violate the Contract Clause of the U.S. Constitution, U.S. Const. art. I, § 10. The Debtor Plaintiffs and New Chrysler seek a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which, with exceptions not relevant here, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

PROCEDURAL HISTORY

The Colorado defendants filed a motion in this Court to withdraw the reference pursuant to either the mandatory or discretionary withdrawal provisions of 28 U.S.C. § 157(d). (Docket # 1.) They argued that the Complaint raised only issues of non-core federal law – specifically including federal preemption, the Contracts Clause and the Federal Dealer Arbitration Statue, codified in the Consolidated Appropriations Act of 2010, Pub. L. 111-117, § 747, 123 Stat. 3034, 3219-21 (2009). The Kentucky defendant did not join the motion to withdraw the reference. The Court concluded that the mandatory withdrawal provisions of section 157(d) applied, since the Complaint was based upon substantial and material issues of federal law outside of the Bankruptcy Code. (Docket # 5.)

The present motion followed. In addition, the Kentucky defendant moves to dismiss the Complaint. The Court heard oral argument on the pending motions.

THE DECLARATORY JUDGMENT ACT AND THE ELEVENTH AMENDMENT

This is an action for declaratory and injunctive relief against public officials in

Colorado and Kentucky.  The defendants concede that this court has subject matter jurisdiction

pursuant to 28 U.S.C. §§ 1331 and 1367 but assert that the case is barred by the Eleventh

Amendment.  (Col. Opp. at 10; Ken. Mem. at 8; Ken. Rep. at 4.)  In Ex parte Young, 209 U.S.

123 (1908), the Supreme Court held that the Eleventh Amendment does not bar a suit for

prospective injunctive relief against a state official alleged to have violated federal law.  Pursuant

to the Declaratory Judgment Act, 28 U.S.C. § 2201, Count I of the Complaint seeks declaratory

relief as to federal preemption of the state laws, and Count II seeks declaratory relief as to a

Contract Clause claim.  (Compl. ¶¶ 54-67.)   The Complaint also seeks a permanent injunction

against "enforcement or application of the Rejected Dealer Amendments to New Chrysler . . . ."

(Complaint, Relief Requested ¶ (c).)

The Declaratory Judgment Act provides that "[i]n a case of actual controversy

within its jurisdiction . . . any court of the United States . . . may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or

could be sought."  28 U.S.C. § 2201(a).  "[T]he phrase 'case or actual controversy' in the Act

refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).  In MedImmune, which arose in

the patent context, the Supreme Court stated, among other things, that in a declaratory judgment

action, "where threatened action by government is concerned, we do not require a plaintiff to

expose himself to liability before bringing suit to challenge the basis for the threat – for example,

the constitutionality of a law threatened to be enforced."  Id. at 129 (emphasis in original).  In

declaratory judgment actions, "the question in each case is whether the facts alleged, under all

8

the circumstances, show that there is a substantial controversy, between the parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment." Id.

Judges within this district, but not the Second Circuit, have had occasion to apply

MedImmune. See, e.g., Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office, 669

F. Supp. 2d 365, 390-92 (S.D.N.Y 2009) (pursuant to MedImmune, plaintiffs had standing to

bring a declaratory judgment action to challenge patents' validity and unconstitutionality, when

alternative would require deliberate patent violations in order to test patents' lawfulness);

Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc., 523 F. Supp.

2d 376 (S.D.N.Y. 2007) (denying motion to dismiss claim brought under the Declaratory

Judgment Act when plaintiffs plausibly claimed high risk of harm due to defendants' likely

future statements about authenticity of plaintiffs' product).

According to the Complaint and the record on summary judgment, the defendants

are officers of states that have adopted laws alleged to be contrary to the Supremacy Clause and

the Contract Clause.  For the plaintiffs, the alternative to pursuing declaratory relief would be to

test the constitutionality of the state dealer laws by violating them.  As MedImmune notes, this is

the very conduct that the Declaratory Judgment Act seeks to avoid.  549 U.S. at 128-29.  The

circumstances reflect a substantial controversy between parties with adverse legal interests, of

immediacy and reality sufficient to entertain a declaratory judgment action.  See id.

STANDING, RIPENESS AND VENUE

Kentucky contends that the plaintiffs, and Old Carco specifically, lack standing to

assert these claims against the Kentucky Motor Vehicle Commission.  "Standing is a federal

jurisdictional question 'determining the power of the court to entertain the suit.' "  Carver, 621

9

F.3d at 225 (quoting Warth, 422 U.S. at 498).  "The [s]tanding doctrine determines 'whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Art. III,' and is therefore 'entitled to have the court decide the merits of the dispute or of particular issues.' "  Amnesty Intern. USA v. Clapper, 638 F.3d 118, 131 (2d Cir. 2011) (quoting Warth, 422 U.S. at 498) (internal citation omitted).  There are three Article III standing requirements: (1) the plaintiff must have personally suffered an injury-in-fact, i.e., an invasion of a judicially cognizable interest which is concrete and particularized as well as actual or imminent, rather than conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct at issue such that the injury is fairly traceable to the challenged conduct; and (3) the injury must be likely to be redressed by a favorable decision.  Lujan, 504 U.S. at 560–61; Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).

This court may entertain a suit as long as one plaintiff has standing and need not establish whether other plaintiffs also have standing before proceeding to the merits of a case. Bowsher v. Synar, 478 U.S. 714, 720 (1986).  New Chrysler has standing in this case. Enforcement of the Kentucky statute would cause New Chrysler to sustain an injury that could be redressed by this decision.  Specifically, New Chrysler either will have to forego selling its products within ten miles of a rejected dealer for ten years or will have to offer to contract with the dealers whose previous contracts were rejected during the bankruptcy proceeding. Kentucky's arguments going toward the justiciability of this case assert that any injury is not yet realized, and therefore does not constitute an actual case or controversy.  As previously discussed, MedImmune held that the Declaratory Judgment Act permits a plaintiff to seek

prospective declaratory relief rather than face exposure to liability or injury before seeking remedial relief.  549 U.S. at 128-29.  This is sufficient to confer standing in this case.

Kentucky further asserts that plaintiffs' claims are not ripe for adjudication because the Kentucky Motor Vehicles Commission has not been asked to issue a license, nor has it declined to issue a license, under the amended law.  "Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts."  United States v. Fell, 360 F.3d 135, 139 (2d Cir. 2004), cert. denied, 125 S.Ct. 369 (2004).  "In order to determine whether an issue is ripe for adjudication, a court must make a fact-specific evaluation of 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  Id. (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)).  The "fitness of the issues" prong of this inquiry "requires a weighing of the sensitivity of the issues presented and whether there exists a need for further factual development."  Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (citing Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581 (1985)).  "Meanwhile, the 'hardship to the parties' prong clearly injects prudential considerations into the mix, requiring [the court] to gauge the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined."  Id. (citing Abbott Labs., 387 U.S. at 149).

New Chrysler would like to award its vehicle lines to a dealer of its choice in the St. Matthews area of Louisville, Kentucky but that dealer will not be granted a license under the Kentucky statute unless New Chrysler first offers the same agreement to a former, rejected dealer in that market.  (See Tangeman Decl. ¶¶ 12-14.)  Kentucky implies that New Chrysler's dealer should have to apply for, and presumably be denied, a license for this claim to be ripe, but this ignores the negative impact the Kentucky statute is having on New Chrysler's ability to

attract dealers on competitive terms in these markets.  The issues are fit for judicial

determination and withholding consideration will cause plaintiffs hardship as New Chrysler

seeks new dealers.  The claim is sufficiently ripe for adjudication.

 At oral argument, Colorado argued that the claim against it was not ripe because

the Colorado statutes, on their face, do not apply to any of the plaintiffs in this action, an

argument not raised in its written submissions.  "It's clear that the statute, as a matter of . . .

statutory interpretation, . . . applies to an auto manufacturer that went through an insolvency

proceeding or [to] its successor; and that by virtue of the orders entered in bankruptcy court,

New Chrysler isn't either."  (Trial Transcript of January 28, 2012 Hearing at 14-15.)  Colorado

acknowledges that it is bound by the Bankruptcy Court's Orders and Opinions that are discussed

in further detail below, which found that New Chrysler is not a successor to Old Carco.

> "It's always been Colorado's view that we're bound by the sale
> order.  We had notice of the Chrysler bankruptcy. . . .  We did not
> object to the sale. . . .  It's always been our view that the sale order
> is a final order.  We've not challenged in in this litigation or in any
> other forum.  The sale order states that New Chrysler is not a legal
> successor for any purpose of Old Carco. . . .  [W]e accept that
> order of the Court."  (Tr. Trans. at 12-13.)

 For these reasons, I conclude that the claim against Colorado is not ripe, dismiss it

without prejudice and retain continuing jurisdiction over the matter.

 Lastly, Kentucky argues that venue is not proper in this district.  Because this case

is within the core jurisdiction of the Bankruptcy Court, venue is proper in this district.  28 U.S.C.

§ 1409.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the

events giving rise to the claim occurred in this district.  Specifically, the Purchase Agreement

was entered and approved in this district and the Bankruptcy Court retained jurisdiction over all

matters relating to the Sale Order and Rejection Order.  (Rejection Order, p. 6 ¶ 7; Sale Order, p. 49 ¶ 59.)

       This court also denies Kentucky's request to transfer the case to the Eastern District of Kentucky.  District courts should consider a number of factors in determining whether transfer is appropriate, including: "(1) the plaintiffs choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir.2006). However, a plaintiff's choice of venue is entitled to "substantial consideration." In re Warrick, 70 F.3d 736, 741 (2d Cir.1995) (per curiam). And the burden is on the moving party to establish that transfer is warranted. Factors Etc., Inc. v. Pro Arts Inc., 579 F.2d 215, 218 (2d Cir.1978), *overruled on other grounds by*, Pirone v. Macmillon, Inc., 894 F.2d 579 (2d Cir.1990).  Kentucky has not carried its burden.

SUMMARY JUDGMENT STANDARD

       Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited burden of

production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir.1995) (internal quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c). In the absence of any disputed material fact, summary judgment is appropriate. Rule 56(a).

Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita, 475 U.S. at 587); see also Anderson, 477 U.S. at 249-50 (summary judgment may be granted if the evidence is "merely colorable" or "not significantly probative") (citations omitted). An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (quotation marks omitted).

DISCUSSION

     I.     <u>Overview of the Disputed State Dealer Laws</u>

        The disputed dealer amendments passed by Colorado and Kentucky are directed toward the ability of a manufacturer or distributor to contract with a dealership franchise in a geographic market area recently occupied by a terminated dealer of the same vehicle brand. Each of the statutes became effective after the Sale Opinion of May 31, 2009 and the Rejection Order of June 9, 2009.  An analysis of the plaintiffs' preemption and Contract Clause claims begins with the text of these statutory amendments.  I review each in turn.

     A.  <u>Colorado</u>

        Colorado Dealer Law prohibits a variety of practices between automobile manufacturers and franchisees.  The disputed amendments to that law are set forth in Colorado House Bill 10-1049, which became effective on March 22, 2010.  The statute prohibits a successor manufacturer from establishing any new dealerships, or relocating existing dealerships, within a 5-10 mile radius of a Rejected Dealer for five years without first offering the dealership to the Rejected Dealer on the same terms.  Colo. Rev. Stat. §12-6-120.3(5)(c).  In the alternative, the Rejected Dealer may opt to have the successor manufacturer pay the Rejected Dealer the "fair market value of the [rejected] motor vehicle dealer's goodwill" within ninety days of rejection.  Colo. Rev. Stat. § 12-6-120(r).  The successor manufacturer would also have to reimburse Rejected Dealers for "any upgrades or alterations" made to the dealership in the five years preceding the rejection.  Colo. Rev. Stat. § 12-6-120(v).  The penalty for failure to comply with these requirements is $10,000-25,000 per day and the Executive Director of the Colorado Department of Revenue may take action to suspend or revoke the successor manufacturer's license. Colo. Rev. Stat. § 12-6-105.

Colorado argues that this statute does not apply to any of the plaintiffs in this case.  The statute would not apply to Old Carco Liquidation Trust, the successor to Old Carco and Old Carco Motors, because it does not manufacture or distribute cars in Colorado or hold a license to do so.  Colorado also argues that the statute does not apply to New Chrysler because it is not a successor of Old Carco and Old Carco Motors and thus, has never terminated any franchises as the result of insolvency.  In support, Colorado cites to the Sale Order, which states that New Chrysler "shall not be deemed, as a result of any action taken in connection with the Purchase Agreement or any of the transactions of documents ancillary thereto or contemplated thereby or the acquisition of the Purchased Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors . . . ."  (Sale Order, p. 40 ¶ 35.)  The Sale Order also states that "the Purchaser shall not have any successor . . . liability[y] . . . for any Claims . . . on any theory of successor or transferee liability, . . . whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed of contingent, liquidated or unliquidated.  (Id., p. 41 ¶ 35.)  As the Colorado statute, on its face, does not apply to either Old Carco or to New Chrysler, this Court concludes that the claim against Colorado is not ripe, dismisses it without prejudice and retains continuing jurisdiction over the matter.

B.  <u>Kentucky</u>

The disputed Kentucky amendments became effective on July 14, 2010 and preclude the Kentucky Motor Vehicle Commission from granting new dealer licenses to applicants within a ten mile radius of a Rejected Dealer for ten years unless the Rejected Dealer is first offered, and rejects, "substantially similar terms" by New Chrysler.  Ky. Rev. Stat. § 190.0451.  This amendment also applies to dealers that wish to relocate existing dealerships to these areas.  <u>Id</u>.  There is no dispute that this amendment applies to New Chrysler.

II.     The Bankruptcy Code and the Orders of the Bankruptcy Court Preempt the State Dealer Laws

The Constitution's Supremacy Clause, Article VI, Clause 2, states that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitutions or Laws of any State to the contrary notwithstanding."  Since Gibbons v. Ogden, 9 Wheat. 1 (1824), it has been "[a] fundamental principle of the Constitution is that Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000).  Courts recognize three categories of federal preemption:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, 'where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law'; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

New York SMSA Ltd. Partnership v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010) (per curiam) (quoting Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 313 (2d Cir. 2005)).  In application, these categories may be overlapping or complementary.  See, e.g., Sprietsma v. Mercury Marine, a Div. of Brunswick Corp., 537 U.S. 51, 65 (2002) (a statute's express preemption provision may support a holding of implied conflict preemption).

"By their nature, field preemption and conflict preemption are usually found based on implied manifestations of congressional intent."  New York SMSA Ltd., 612 F.3d at 104.  "[E]ven if Congress has not occupied the field, state law is nevertheless pre-empted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible, or when the state law 'stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress.'"  <u>California v. ARC America Corp.</u>, 490 U.S. 93, 100-01 (1989).  The Supreme Court has held that federal bankruptcy law expressly supersedes state laws directed toward insolvency.  <u>International Shoe Co. v. Pinkus</u>, 278 U.S. 261, 265 (1929) ("In respect of bankruptcies the intention of Congress is plain.  The national purpose to establish uniformity necessarily excludes state regulation.").

      Preemption is presumed not to apply in areas traditionally regulated by the States.  <u>See</u>, <u>e.g.</u>, <u>Wyeth v. Levine</u>, 129 S. Ct. 1187, 1194-95 (2009) (the states' "historic police powers" are presumed not to be superseded by federal law, absent an express statement of Congress); <u>Hillsborough County, Fla. v. Automated Medical Labs., Inc.</u>, 471 U.S. 707, 715-16 (1985) ("regulation of matters related to health and safety" are presumed not to be preempted).  The presumption is overcome, however, when state law cannot be reconciled with federal law.  <u>See</u>, <u>e.g.</u>, <u>Boggs v. Boggs</u>, 520 U.S. 833, 840-41 (1997) (conflict preemption requires state community property law to give way to ERISA, even though community property laws "implement policies and values lying within the traditional domain of the States.").

      The exclusive authority of Congress and the federal courts to pass and enforce the bankruptcy laws has long been recognized, and the federal courts have guarded against the states' encroachment into bankruptcy.  <u>Int'l Shoe</u>, 278 U.S. at 263-64 ("A state is without power to make or enforce any law governing bankruptcies that impairs the obligation of contracts or . . . conflicts with the national bankruptcy laws."); <u>In re Prudence Co.</u>, 79 F.2d 77, 80 (2d Cir. 1935) ("[A] declaration by a state that a certain class of corporations is not amenable to bankruptcy is <u>brutum</u> <u>fulmen</u>, unless the Bankruptcy Act itself excepts that class."); <u>In re Bankshares Corp. of U.S.</u>, 50 F.2d 94, 95 (2d Cir. 1931) ("No state enactment may limit the jurisdiction of the bankruptcy court.").

Courts including the Second Circuit have discussed in detail the Bankruptcy Code's preemption of state-law claims in the context of tort claims asserting injury from a defendant's conduct in bankruptcy proceedings.  In each case, a plaintiff commenced an action asserting that a defendant's action in bankruptcy court were contrary to state law, and raised the claim in a tribunal other than bankruptcy court.  Courts have uniformly concluded that the Bankruptcy Code preempted the state law claims.

In <u>Eastern Equipment & Services Corp. v. Factory Point Nat'l Bank</u>, 236 F.3d 117, 121 (2d Cir. 2001) (per curiam), the plaintiffs commenced an action in federal district court, and asserted several state-law tort claims directed toward the defendants' alleged failure to abide by the Bankruptcy Code's automatic-stay provision, 11 U.S.C. § 362.  <u>Id.</u> at 121.  The district court held that federal law preempted the plaintiffs' state-law claims, and that, moreover, claims directed toward violation of the automatic stay should have been brought in the underlying bankruptcy proceedings, not in a separate district court action.  <u>Id.</u> at 120.  The Second Circuit affirmed, stating that as to preemption, "[t]he United States Bankruptcy Code provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights."  <u>Id.</u>  It held that the following factors weighed in favor of the Bankruptcy Code's preemption of state tort laws:

> (1) Congress placed bankruptcy jurisdiction exclusively in the district courts under 28 U.S.C. § 1334(a); (2) Congress created a lengthy, complex and detailed Bankruptcy Code to achieve uniformity; (3) the Constitution grants Congress exclusive power over the bankruptcy law, see U.S. Const. art. I, § 8 cl. 4; (4) the Bankruptcy Code establishes several remedies designed to preclude the misuse of the bankruptcy process; and (5) the mere threat of state tort actions could prevent individuals from exercising their rights in bankruptcy, thereby disrupting the bankruptcy process.

19

Id. at 121 (citing MSR Exploration, Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 913-16 (9th Cir. 1996)).

While the facts of Eastern Equipment were limited to claims alleging non-compliance with the automatic stay, in Astor Holdings, Inc. v. Roski, 325 F. Supp. 2d 251, 262 (S.D.N.Y. 2003), then-District Judge Lynch observed that Eastern Equipment articulated "the broad scope of bankruptcy preemption," and that "the factors considered by the Second Circuit in reaching this conclusion relate to all aspects of the bankruptcy process, not just the automatic stay provision . . . ."  In Astor Holdings, the plaintiff asserted a breach of fiduciary duty claim based in part on an allegation that the defendant induced a third party to file for bankruptcy, thereby harming the plaintiff.  Id.  Judge Lynch held that the claim was preempted, "since preemption entails that a claim that could have been made, and for which a remedy is provided, under the Bankruptcy Code cannot be the subject of regulation by state statutory or common-law remedies."  Id.  Moreover, "'no authorized proceeding in bankruptcy can be questioned in a state court or used as the basis for the assertion of a tort claim in state court against any defendant.'"  Id. (emphasis in original) (quoting Choy v. Redland Ins. Co., 103 Cal. App. 4th 789 (Cal. Ct. App. 2002)).  Because the Bankruptcy Code includes "'several remedies designed to preclude the misuse of the bankruptcy process,'" the plaintiff's claim was preempted.  Id. (quoting Eastern Equipment, 236 F.3d at 121).

Eastern Equipment and Astor Holdings both relied on the Ninth Circuit's MSR Exploration opinion, which Judge Lynch described as using "sweeping language" comparable to Eastern Equipment.  Id. at 263.  MSR Exploration observed that even a minor incursion into federal bankruptcy was tantamount to "state courts, in effect, interfering with the whole complex, reticulated bankruptcy process itself."  Id.; accord In re Miles, 430 F.3d 1083, 1090 (9th Cir.

2005) ("Allowing state court remedies for wrongful filings may well interfere with the filings of involuntary bankruptcy petitions by creditors and with other necessary actions that they, and others, must or might take within the confines of the bankruptcy process.").  Citing to the Federalist Papers and the commentaries of Justice Story, MSR Exploration described federal primacy in the bankruptcy realm as "unique, historical, and even constitutional . . . ."  74 F.3d at 915.

Eastern Equipment, Astor Holdings and MSR Exploration all arose out of collateral litigations that challenged the conduct of bankruptcy proceedings.  The state dealer laws, in their current form, pose similar obstacles to the enforcement of the Bankruptcy Code and the lawful judicial orders issued thereunder.  Claims brought under the states' dealer amendments would necessarily revisit the Rejection Opinion and the Rejection Order, amounting to a use of state law to mount a collateral attack on the Bankruptcy Court's Rejection Order.  The Bankruptcy Code explicitly grants a bankruptcy court the power to reject an executory contract.  11 U.S.C. § 365(a) ("the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.").  As noted in the Rejection Opinion, the authority to reject an executory contract has been described by the Supreme Court as "'vital to the basic purpose to a Chapter 11 reorganization . . . .'"  406 B.R. at 187 (quoting NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984)).

The Rejection Opinion based its reasoning on the business judgment standard, which applies when a Bankruptcy Court approves a debtor's assumption or rejection of a contract.  Id. at 187-88 (summarizing business judgment standard and rejecting argument that state dealer statutes alter the standard's application).  Acting pursuant to 11 U.S.C. §§ 105 and 365, the Bankruptcy Court concluded that rejection of certain dealer contracts was necessary "to

rationalize [the debtors'] dealership network." Id. at 193.  The Rejection Opinion, in a lengthy and detailed analysis, held that it was a valid business judgment that a smaller, more centralized, more concentrated network of dealerships would be in the debtors' best business interests, and that the debtors had performed "comprehensive statistical assessments" of each existing dealer to reach an "optimal configuration" for a national market.  Id. at 193-99.  The Bankruptcy Court specifically noted that "there is no doubt that the acceleration of dealership rationalization benefited New Chrysler by enabling it to avoid the costs attendant to such reduction if it took place outside bankruptcy."  Id. at 197.

The defendants argue that the Supremacy Clause and preemption doctrine do not apply to federal judicial rulings, and instead apply only to regulations and statutes.  But the Bankruptcy Code is not self-executing.  In approving the assumption and rejection of certain dealer agreements, the Bankruptcy Court implemented 11 U.S.C. § 365(a).  The Bankruptcy Code vests the bankruptcy courts with authority to implement the federal statutory scheme, and grants them the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); see also Adelphia Business Solutions, Inc. v. Abnos, 482 F.3d 602, 609 (2d Cir. 2007) (Congress granted "broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code.").

The principles of conflict preemption preclude application of the challenged state dealer amendments to deny the debtor and the purchaser the benefits of a judicially approved rejection of certain dealer franchise agreements in accordance with the Bankruptcy Code.  Based on the record before me, the plaintiffs have established that compliance with the state dealer amendments would frustrate and undermine lawful actions taken pursuant to the Bankruptcy

Code.  Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995) ("We have found implied conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.") (internal citation and quotation marks omitted).  Compliance with the state amendments would deprive New Chrysler of the Rejection Order's terms.  The Rejection Order, which implemented the rather ordinary action of rejection an executory contract, allowed the debtors to maximize value to the creditors, consistent with the goals of bankruptcy law.

The Bankruptcy Court has previously discussed the preemptive effect of its rulings.  In holding that claims brought by Rejected Dealers in Arkansas and Ohio were preempted by the Rejection Order and the Rejection Opinion, the Bankruptcy Court held as follows:

> The Subject Actions are in direct conflict with the terms of the Rejection Order because the Dealers are seeking to burden New Chrysler with the obligation of either continuing the previously rejected dealer agreements or suffering other unfavorable consequences as a result of the rejected dealer agreements.  The Rejection Order ended the Dealers' rights to act as authorized dealers while Wisconsin, Ohio, and Arkansas statutes resurrect precisely those rights to compel New Chrysler, the successor/transferee of Debtors, to resume the dealer agreements. As there is a direct conflict between the Rejection Order and the statutes under which the Subject Actions are based, the state statutes are preempted under the Rejection Order and the Dealers are enjoined under the Sale Order from bringing any actions pursuant to these statutes in any court.
>
> . . .

> Both the Rejection Order and the Rejection Opinion found that, in their business judgment, the Debtors' rejection of the agreements was necessary and appropriate to consummate the Fiat Transaction and transfer to the purchaser, New Chrysler, a smaller, more effective, and more profitable dealer network without disruption while limiting the Debtors' potential postpetition obligations to the rejected dealers. Since the actions undertaken . . . pursuant to the so-called "blocking statutes" would frustrate the benefit achieved through the rejection process, such statutes were preempted and the Subject Actions precluded.

(Compl. Ex. F at 8-9.)  The Rejection Order included the following statement:

> To the extent that any Dealer Laws conflict with the terms of this Order or the impact of the rejection of the Rejected Agreements under the Bankruptcy Code and applicable case law, such laws are preempted by the Bankruptcy Code, pursuant to the Supremacy Clause of the United States Constitution.

(Rejection Order ¶ J.)  The Bankruptcy Court's reasoning applies with equal force to the plaintiffs' challenge to the amendments.

In at least two other instances, federal courts have held that the Bankruptcy Code preempts the application of state laws governing the relationship between automobile franchises and manufacturers.  In re Dan Hixson Chevrolet Co., 12 B.R. 917, 920 (Bankr. N.D. Tex. 1981), held that 11 U.S.C. § 365 preempted the Texas Motor Vehicle Code, even though the state statute reflected a proper exercise of the state's police power.  Texas statute made it unlawful for a manufacturer to terminate a franchise against a dealer's objections, absent proving good cause before an administrative tribunal.  Id. at 922-23.  The court held that section 365 of the Bankruptcy Code and the Texas dealership laws "both regulate[d] the executory contractual relationship between a manufacturer and a dealer-debtor."  Id. at 924.  Enforcement of the state

24

statue "would frustrate the purposes of federal bankruptcy laws," the court held, "as Congress by enacting § 365 of the Bankruptcy Code has withdrawn from all other courts the power to decide this issue." Id.  The second opinion, In re Tom Stimus Chrysler-Plymouth, Inc., 134 B.R. 676, 678-79 (Bankr. M.D. Fla. 1991), concluded in more summary fashion that "the assumption or rejection of the [dealer] contract with Chrysler is governed by § 365 of the Code, rather than the Florida Statutes relied on by Chrysler."

    The Kentucky statute conflicts with the Rejection Order and the Rejection Opinion, which have already approved New Chrysler's termination of Rejected Dealer Agreements.  The Rejection Opinion specifically states that "blocking rights . . . impose limitations on . . . manufacturers . . . [that] . . . frustrate § 365" of the Bankruptcy Code. (Rejection Opinion at 32.)  The parties do not dispute that the Kentucky statute, if enforced, would prevent New Chrysler from licensing a new franchisee in the area of a Rejected Dealer before providing the Rejected Dealer with a right of first refusal.

    The Kentucky statute purports to revive the Rejected Dealer rights that were specifically extinguished in the Rejection Opinion and thus, is incompatible with the ruling of the Bankruptcy Court.  The statute identifies a state-sanctioned method for rejecting a dealer; if a manufacturer, in good faith and with good cause, notifies a dealer of its termination ninety days prior to the effective date of termination, then § 190.0451 of the statute is not triggered, and the rejected dealer acquires no blocking rights.   See Ky. Rev. Stat. §§ 190.045-190.0451.  Good cause includes failure to comply with a term of the franchise agreement and poor sales performance, and the notification requirement decreases to fifteen days in the case of termination due to insolvency.  Id.  Because a rejection order from a federal bankruptcy court does not satisfy the state-sanctioned method of rejection, a manufacturer wishing to establish a new, or relocate

an existing, dealership within ten miles of the rejected dealer in the next ten years must first offer the rejected dealer the franchise on substantially similar terms, effectively granting the rejected dealer the blocking rights extinguished by the Bankruptcy Court.  See Ky. Rev. Stat. § 190.0451; (Rejection Opinion at 32.)  The Kentucky statutory scheme renders full enforcement of the orders of the Bankruptcy Court impossible.  The Supremacy Clause of the U.S. Constitution resolves the direct conflict in favor of the federal statute.

Kentucky's argument that it may not decide to enforce the statute against New Chrysler does not alter the fact that the statute conflicts with federal law.  Similarly, that this prohibition is effectuated not by prohibiting New Chrysler from contracting with a new dealer but by denying the license directly to the dealer seeking the franchise does not change the analysis.  The coercive effect is the same.

For the foregoing reasons, I conclude that the federal Bankruptcy Code, as enforced by the orders of the Bankruptcy Court, preempts the disputed statutory amendments of Kentucky as they apply to the plaintiffs.  Summary judgment is therefore granted to the plaintiffs on that claim.

III.   Defendant Kentucky's Motion to Dismiss is Denied

The motion to dismiss filed by Kentucky does not set forth any arguments distinguishable from those raised in their opposition to summary judgment.  For the reasons already explained, the motion to dismiss filed by Kentucky is denied.

CONCLUSION

The plaintiffs' motion for summary judgment is GRANTED as to their preemption claim against Kentucky defendant Cottrell.  (Docket # 29, No. 10-05010.)  The motion to dismiss filed by Kentucky is DENIED.  (Docket # 17, No. 10-05010.)  The Amended

26

Complaint is DISMISSED without prejudice as to the Colorado defendants, but this court retains continuing jurisdiction over the matter.

The parties are directed confer as to a proposed form of judgment that sets forth both the declaratory and injunctive relief sought in the Complaint. The proposed form of judgment should be submitted to the Court no later than March 23, 2012. In the event that the parties are unable to agree on a proposed form of judgment, the plaintiffs shall submit a proposed judgment and the defendants may set forth the basis for their disagreements via letter-brief within three days.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:     New York, New York
           March 14, 2012

27